Case 4:16-cv-02293   Document 29   Filed on 12/19/18 in TXSD   Page 1 of 20

United States District Court
Southern District of Texas
**ENTERED**
December 19, 2018
David J. Bradley, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ANDREW COLLINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. H-16-2293 |
| | § | |
| NOBLE DRILLING (U.S.) LLC, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM AND RECOMMENDATION**

Pending in this case that has now been referred to the undersigned Magistrate Judge for all pretrial proceedings is Defendant's Motion for Summary Judgment (Document No. 17). Having considered that motion, the response in opposition, Defendant's reply, the summary judgment evidence, and the applicable law, the Magistrate Judge RECOMMENDS, for the reasons set forth below, that Defendant's Motions for Summary Judgment (Document No. 17) be GRANTED.

**I.     Background and Procedural History**

This is an employment discrimination case brought by Plaintiff Andrew Collins ("Collins") against his former employer, Noble Drilling (U.S.), LLC. ("Noble"). Collins alleges in the Original Complaint he filed that he was discriminated against on the basis of his race (African American), was subjected to a sexually hostile work environment, and was retaliated against when he voiced complaints of discrimination and retaliation. He has alleged claims of race discrimination under 42 U.S.C. § 1981, sex discrimination under Title VII, and retaliation under Title VII.

According to the allegations in Collins' Complaint, while he was working for Noble as a warehouseman in 2012, another employee "displayed a hangman's noose" to him. Collins alleges

that he "immediately reported" the incident, but little was done. Collins also alleges that after he began working as a roustabout on the Noble Globetrotter I in 2014, he began to experience sexual harassment by fellow roustabouts Tyler Eaves and Jase Hardee, and crane operator Matt Housley, which consisted of those employees "grabbing and poking of his buttocks, grabbing of his scrotum, and simulating sexual acts towards him." Complaint (Document No. 1) at 4. According to Collins, despite his "numerous protests and reports, the conduct continued and no substantial action was implemented by [Noble] to deter the sexual[lly] harassing conduct." *Id.* Collins also alleges that "[f]ollowing his reports to human resources and management, [he] was issued unwarranted disciplinary actions and was repeatedly threatened by management with write-ups and impending disciplinary action. [Noble] further retaliated against [him] by transferring him to the Noble Bob Douglas, a less-desired offshore facility," and ultimately terminated his employment. *Id.*

In its Motion for Summary Judgment, Noble seeks summary judgment on all of Collins' claims. Noble argues that summary judgment is warranted on Collins' § 1981 claim because the summary judgment evidence shows that Collins was not subjected to a racially hostile work environment, that Noble took prompt remedial action upon learning of the "hangman's noose," and that Collins' termination was based on Collins' failure to return to work upon the expiration of his 180 day approved short term disability leave. Noble also argues that summary judgment is warranted on Collins' sex discrimination and retaliation claims because the summary judgment evidence shows that it took prompt remedial action once Collins raised his complaints of harassment with Human Resources, and that Collins' one "write-up" and his transfer to another offshore facility are not "adverse employment actions" that will support a retaliation claim.

In response to Noble's Motion for Summary Judgment, Collins maintains that there are

2

genuine issues of material fact on whether Noble knew or should have known of the harassment and whether it took prompt remedial action, and whether there is a causal connection between his complaints of harassment and both the written reprimand he received and his transfer to another offshore facility. Collins did not respond, at all, to that part of Noble's Motion for Summary Judgment which seeks summary judgment on his § 1981 race discrimination claim(s).

## II.  Summary Judgment Standard

Rule 56(a) provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). The moving party must initially "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986). Once the moving party meets its burden, the burden shifts to the nonmovant, "who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists" and that summary judgment should not be granted. *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008); *see also Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998).[1] A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Celotex*, 106 S. Ct. at 2548. Instead, "the nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential

---

[1] Where "the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim." *Norwegian Bulk Transport A/S v. International Marine Terminals Partnership*, 520 F.3d 409, 412 (5th Cir. 2008).

3

component of its case." *Morris*, 144 F.3d at 380.

In considering a motion for summary judgment, all reasonable inferences to be drawn from both the evidence and undisputed facts are be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing *Matsushita*, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id.* Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

### III. Discussion

#### A.   § 1981 Race Discrimination Claims

Noble devoted much of its Motion for Summary Judgment to Collins' § 1981 claim, arguing that Collins cannot make out a *prima facie* case of a racially hostile work environment, and cannot make out a *prima facie* case of disparate treatment race discrimination. Collins, in his response to the Motion for Summary Judgment, did not mention his § 1981 claim or submit any summary judgment evidence in support of it. Collins has, as a result, abandoned that claim, *see Keenan v. Tejeda*, 290 F.3d 252, 262 (5th Cir. 2002) (a claim or issue raised in a pleading but ignored on summary judgment may be considered waived and/or abandoned), *Black v. N. Panola Sch. Dist.*, 461 F.3d 584, 588 n.1 (5th Cir. 2006) ("failure to pursue [a] claim beyond her complaint constituted abandonment"), and Noble, for the reasons set forth in its Motion for Summary Judgment and based

on the uncontroverted summary judgment evidence it has submitted, is entitled to summary judgment on Collins' § 1981 race discrimination claim(s). *See e.g., Holmes v. N. Texas Health Care Laundry Coop. Ass'n*, 304 F. Supp. 3d 525, 540–41 (N.D. Tex. 2018) (where plaintiff failed to pursue her Title VII retaliation claim and her state law claims when responding to defendant's motion for summary judgment, those claims considered abandoned or waived and summary judgment for defendant on those claims was warranted).

## B. Sex Discrimination/Hostile Work Environment Claim under Title VII

Collins' sex discrimination claim is based on unwanted sexual contact and harassment he claims to have suffered at the hands of Matt Housley, Jase Hardee and Tyler Eaves, while he worked as a roustabout on the Globetrotter I, from February 2014 to July 2014. Noble, in its Motion for Summary Judgment, does not dispute that Collins was subjected to unwanted contact and harassment, but instead maintains that it is entitled to summary judgment on Collins' sex discrimination/hostile work environment claim because the summary judgment evidence shows that the harassment was by Collins' co-workers and because there is no summary judgment evidence that raises a genuine issue of material fact on the fifth element of Collins' *prima facie* case – that Noble knew or should have known of the harassment and failed to take prompt remedial action.

Title VII prohibits an employer from discharging or otherwise discriminating against any individual because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a)(1). Actionable employment discrimination under Title VII can be based on disparate treatment, disparate impact, and/or a hostile work environment. *Barnes v. McHugh*, Civil Action No. 12-2491, 2013 WL 3561679 *11 (E.D. Tex. July 11, 2013) ("Courts have recognized several types of Title VII and ADEA claims. A plaintiff can assert "status-based" Title VII claims under 42

5

U.S.C.A. § 2000e–2(a) and (k), "retaliation" claims under 42 U.S.C .A. § 2000e–3, and "hostile work environment" claims, both for status-based discrimination and retaliation. Title VII status-based discrimination claims are divided into two categories: "disparate treatment" claims pursuant to § 2000e–2(a)(1), and "disparate impact" claims pursuant to 2000e–2(k)"). At issue in this case is hostile work environment discrimination.

For hostile work environment claims under Title VII, a plaintiff bears the burden of establishing a *prima facie* case. When the alleged hostile work environment is based on conduct by a supervisor, as that term has been defined and limited by the Supreme Court in *Vance v. Ball State University*, 133 S.Ct. 2434 (2013), a *prima facie* case consists of evidence of: (1) membership in a protected class; (2) unwelcome harassment; (3) harassment based on the plaintiff's membership in a protected class; and (4) harassment that affects a term, condition, or privilege of employment. *See Cortes v. Maxus Exploration Co.*, 977 F.2d 195, 199 (5th Cir. 1992); *see also McCray v. DPC Indus., Inc.*, 942 F. Supp. 288, 292 (E.D. Tex. 1996).[2] When the alleged hostile work environment is not based on the conduct of a "supervisor," a fifth element is required for a *prima facie* case: that the employer knew or should have known of the harassment and failed to take prompt remedial action. *Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 651 (5th Cir.), *cert. denied*, 568 U.S. 817 (2012).

For purposes of a *prima facie* hostile work environment claim, sex, race, national origin, and age (over 40) are all protected classes. As for the harassment complained of, it must be both unwelcome, and *based on* the plaintiff's membership in a protected class. *E.E.O.C. v. Boh Bros.*

---

[2] "The harasser's status as a supervisor converts a negligence action into an action in strict liability." *Pullen v. Caddo Par. Sch. Bd.*, 830 F.3d 205, 214 (5th Cir. 2016).

*Const. Co.*, 731 F.3d 444, 455 (5th Cir. 2013) ("a plaintiff must prove that the discrimination occurred because of sex"). Finally, the alleged harassment must be sufficiently severe or pervasive such that it can be said to affect a term, condition or privilege of employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-23 (1993). Whether the harassment is sufficiently severe or pervasive is based on the totality of the circumstances:

> [W]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances. These may include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.

*Id.* at 23; *accord Long v. Eastfield College*, 88 F.3d 300, 309 (5th Cir. 1996). The conduct must be both objectively hostile to a reasonable person and the plaintiff must subjectively perceive the environment to be abusive. *Harris*, 510 U.S. at 21-22. "[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the "'terms and conditions of employment.'" *Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998).

Here, Collins argues that Matt Housley, a crane operator aboard the Globetrotter I, and one of individuals who sexually harassed him, was his supervisor, and therefore there is no fifth element of a *prima facie* case. Additionally, Collins maintains that Noble knew or should have known of the harassment almost from its inception because he complained about it over fifteen times prior to contacting Human Resources on June 2, 2014, but Noble took no action on his complaints until sometime in August 2014. Collins' arguments raises two issues: (1) whether Housley was his "supervisor" for purposes of his hostile work environment claim; and (2) whether Noble knew or should have known of the harassment and whether it took prompt remedial action once it became aware of the harassment.

7

The first issue is easily addressed. Matt Housley, a crane operator on the Globetrotter I, who had the authority to direct Collins' work, who could issue reprimands, and who was identified by a Human Resources employee as Collins' supervisor, *was not* Collins' supervisor within the meaning of *Vance* because he had no authority to "effect a 'significant change in [Collins'] employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits.'" *Vance*, 133 S.Ct. at 431. The summary judgment evidence in this regard is clear and essentially uncontroverted. Housley did not have the authority to hire or fire Collins, reassign him, or in any way change his benefits. *See* Declaration of Joe Knight, Director-Personnel for Noble, at 2 (Document No. 17-1 at 2-3). All he had the authority to do was direct Collins' work and issue reprimands if that work was determined to be deficient. *Id.*[3] As the "[t]he ability to direct another employee's tasks is simply not sufficient,"

---

[3] Joe Knight, Director of Personnel for Noble states as follows in his Declaration:

9. Matt Housley is a crane operator on the *Globetrotter I*. During the first six months of 2014, Housley and another crane operator, Terence Gallow, served as the lead-persons of a team of roustabouts – which included Collins – scheduled to work 12-hour shifts. Housley and Gallow directed the roustabouts as necessary to support ongoing rig operations and ensure all work was performed safely. As crane operators, Housley and Gallow lacked authority to make decisions involving hiring, firing, suspension, promotion, demotion, transfer, or reassignment. Only a Captain, Rig Manager, Assistant Rig Manager, and Noble's corporate human resources management, including myself, have authority to take those employment actions, though Rig Management does not make hiring decisions. Even if a crane operator recommended that Noble hire, fire, suspend, promote, demote, transfer, or reassign a particular employee, that would have no weight with the actual decisionmakers at Noble. Nor do crane operators, like Housley, have any input into the compensation or benefits that roustabouts receive; compensation and benefits are determined solely by Noble's corporate human resources management, including myself – compensation according to a predetermined scale and benefits according to approved personnel practices and insurance plans. A deck foreman likewise lacks authority to make decisions involving hiring, firing, compensation, benefits, promotion, suspension, demotion,

and as there is no summary judgment evidence in the record that Housley could hire, fire, promote, demote or reassign Collins,[4] Housley was not Collins' supervisor within the meaning of *Vance*. *Vance*, 133 S.Ct. at 439; *see also e.g. Spencer v. Schmidt Elec. Co.*, 576 F. App'x 442, 448 (5th Cir. 2014) (foreman could not be considered a supervisor within the meaning of Vance where he did not have the authority to "take tangible employment actions"). Accordingly, Collins' *prima facie* case of hostile work environment requires a showing that Noble knew or should have known about the harassment and failed to take prompt remedial action.

"[A]n employer's obligation to take prompt remedial action is triggered only when the employee follows the reporting procedures in the employer's anti-harassment policy." *Johnson v. Hyatt Corp.*, Civil No. SA-17-CV-00422-OLG, 2018 WL 5984847 *6 (W.D. Tex. Nov. 11, 2018) (citing *May v. Fedex Freight E., Inc.*, 374 F.App'x 510, 513 (5th Cir. 2010)). In addition, when an initial complaint is made in accord with the employer's anti-harassment policy, but that complaint proves ineffective, the employee should pursue additional or alternative reporting channels. *Lauderdale v. Texas Dep't of Criminal Justice, Institutions Division*, 512 F.3d 157, 165 (5th Cir. 2007); *Wyatt v. Hunt Plywood Co., Inc.*, 297 F.3d 405, 413 (5th Cir. 2002), *reh'g denied*, 48 F.App'x 108, *cert. denied*, 537 U.S. 1188 (2003).

---

transfer, or reassignment.

(Document No. 17-1 at 2-3).

[4] Although Collins states in his Declaration that crane operators Gallow and Housley "had the authority to discipline [him] and other roustabouts," (Document No. 21-2 at 2), there is no summary judgment evidence in the record that Housley could "discipline" Collins in a manner that could affect a significant change in his employment status. In fact, Collins admitted at his deposition that he did not know whether Housley had any authority, at all, over his employment. Collins Deposition at pp. 28-30 (Document No. 21-4 at 30-32).

Here, Collins states in his Declaration that

> . . . . At the outset of my employment on the Noble Globetrotter I, I experienced numerous roustabouts and crane operators – my direct supervisors – touching me in private areas of my body while stating sexual[ly] explicit comments towards me. I immediately complained to Gallow, one of my direct supervisors, Walter Strickland, Deck Foreman and my second line supervisor, and the Directional Position Officer.
>
> 2. Despite me making more than 15 complaints of sexual harassment during my first three hitches, no action was taken. Ultimately, I had to go beyond the normal reporting procedures and call Noble Drilling's corporate office on June 2, 2014.

Declaration of Andrew Collins at 1-2 (Document No. 21-2 at 2-3). In his deposition, Collins was a bit more specific about his complaints, but not by much. When asked who he complained to of the sexual harassment aboard the Globetrotter I, Collins testified that he reported the incidents of harassment to Terrence Gallow "and other members, prominent members on the rig." Collins Deposition at 97 (Document No. 21-4 at 99). When asked if he knew names of other people he made his complaints to on the rig, Collins responded that he couldn't "recall the names." *Id.* at 104-105 (Document No. 21-4 at 106-107). He also testified that he didn't make his complaints to the Human Resources department until June because he had reported the conduct on numerous occasions to his immediate supervisor, Terrence Gallow. *Id* at 108, 114 (Document No. 21-4 at 110, 116).

Against this summary judgment evidence about the nature and manner in which Collins made complaints about the harassment aboard the Globetrotter I is the Noble Administrative Policy Manual, which sets forth, as follows, Noble's "Complaint Procedure":

> An employee should report complaints concerning any violation or possible violation of the nondiscrimination or anti-harassment policy immediately to the Rig Manager, Offshore Installation Manager, Department Head, or VP of Administration. If an employee believes that those persons, for any reason, cannot address or have not addressed his or her complaint, the employee is strongly urged and encouraged to contact the VP of Administration.

10

(Document No. 17-1 at 7). Collins' deposition testimony, even when viewed in the light most favorable to him, does not reveal or suggest that Collins made any complaint of sexual harassment to the Rig Manager, Offshore Installation Manager, Department Head, or VP of Administration. Instead, the summary judgment evidence is that Collins complained to Terrence Gallow, a crane operator who Collins viewed as his supervisor, about the harassment over the first three twenty-one day "hitches"[5] he worked on the Globetrotter I. Thereafter, in early June 2014, he brought his complaint to the Human Resources department. From there, the record shows that Noble investigated Collins' complaint promptly and thoroughly. *See* Declaration of Adrea Leal (Document No. 17-3).

Collins argues at length that his complaints of the harassment to one of the crane operators, and some other unidentified higher-ups on the Globetrotter I is enough to raise a genuine issue of material fact on the fifth element of his *prima facie* case. In addition, he argues that both Terrence Gallow and the higher-ups on the Globetrotter I were required to forward his complaints to Noble, and that Noble, consequently, should have known of the complaints early on – in February 2014 – but took no investigatory action until June 2014, and no remedial action until August 2014.

The summary judgment evidence in the record as to when the harassment occurred and when and to whom Collins' complaints were made is key in determining whether there exists a genuine issue of material fact on the fifth element of Collins' *prima facie* case. Collins states in his Declaration that he was harassed from the outset of his employment aboard the Globetrotter I, and he "immediately" complained to Terrence Gallow, Walter Strickland (Deck foreman) and the

---

[5] For Collins, a "hitch" was a twenty-one day assignment at an offshore facility. Collins worked in 21-day hitches – working 21 consecutive days, followed by 21 days off.

11

"Directional Position Officer." Collins Declaration at 1 (Document No. 21-2 at 2). He also states that he made "more than 15 complaints of sexual harassment during his first three hitches." *Id.* at 2 (Document No. 21-2 at 3). At his deposition, Collins testified that he complained all the time about the harassment, with those complaints generally being made to Terrence Gallow. Collins Deposition at 103, 107, 109, 113-14 (Document No. 21-4 at 105, 109, 111, 116). But, other than the statement in his Declaration that he "immediately" complained about the harassment to Gallow and Walter Strickland, Collins provides no dates, no context, and no names of the persons on the Globetrotter I he voiced his complaints to.

Noble's summary judgment evidence on the fifth element of Collins' *prima facie* claim consists primarily of the Declaration of Adrea Leal, a Human Resources Generalist at Noble, who met with Collins on June 4, 2014, and thereafter participated in the investigation of his sexual harassment complaint. Leal Declaration (Document No. 17-3). She explains in her Declaration, from the interviews and investigation she conducted, that during the second week of Collins' third hitch (in May 2014), Collins complained to Gallow about an incident involving Housley in the fire locker room. Thereafter, Walter Strickland, the deck foreman, met with the "B" crew roustabouts "and reminded them about appropriate behavior." *Id.* at 4 (Document No. 17-3 at 4). Collins' in-person complaint to Human Resources about the sexual harassment aboard the Globetrotter I followed on June 4, 2014. Leal states in her Declaration that upon Collins' complaint, she "promptly launched an investigation into Collins' concerns, along with Human Resources Generalist Chelsea McCarty and Human Resources Manager Rani May," with that investigation including interviews of "various Globetrotter I employees on June 9, June 12, and June 16, including roustabouts Tyler Eaves and Jase Hardee, crane operator Terence Gallow, Housley, the Captain, and others." *Id.* at 3.

During those interviews, Leal learned that the roustabouts had engaged in "the touching as a game where they would goof around and smack each other's backsides as a way of saying, "good job." *Id.* at 3-4. She determined that "Collins had been inappropriately touched by roustabouts on the Globetrotter I, but the roustabouts were no longer engaging Collins in their game of inappropriate touching." *Id.* at 4. As for Housley, Human Resources determined that "Collins had been inappropriately touched by [him] on the Globetrotter I, although [they] did not substantiate that Housley had grabbed Collins' scrotum in the fire locker room." Those determinations led Noble to explore transfer options for Collins as a "fresh start." *Id.* They also led Noble to issue a "final written warning" to Housley, which was presented to him in person on August 7, 2014, after he returned from his latest offshore hitch. *Id.*

The summary judgment evidence shows that from the date Collins made his in person complaint to Noble at its Human Resources department Noble took prompt remedial action. Prior to that complaint, the summary judgment evidence, taken in a light most favorable to Collins, shows, at most, that Collins complained to Terence Gallow and Walter Strickland about the harassment early-on during his first hitch on the Globetrotter I. The summary judgment evidence of Collins' complaints about harassment thereafter to persons aboard the Globetrotter I are non-specific and vague and Collins has pointed to no evidence that such vague and unspecified complaints should have reached Noble or should otherwise be imputed to Noble for knowledge purposes.[6] In particular,

---

[6] In *E.E.O.C. v. Rock-Tenn Servs. Co.*, 901 F. Supp. 2d 810, 826–27 (N.D. Tex. 2012), the Northern District Texas explained the difference between actual knowledge and constructive knowledge as follows:
> A plaintiff may establish an employer's knowledge of the discriminatory conduct by demonstrating either actual or constructive notice to the employer. *See Griffin v. Delchamps, Inc.,* 176 F.3d 480, 1999 WL 155682, at *9 (5th Cir. March 12, 1999); *see also Adler v. Wal–Mart Stores, Inc.,* 144 F.3d 664, 673 (10th Cir.1998)

13

there is no summary judgment evidence that Collins made any complaints or reports to anyone on the Globetrotter I who was in a position to take any "remedial action" against his alleged harassers. This is significant because "[a] title VII employer has actual knowledge of harassment that is known to 'higher management' or to someone who has the power to take action to remedy the problem." *Sharp v. City of Houston*, 164 F.3d 923, 929 (5th Cir. 1999). Here, given the absence of any summary judgment evidence that Collins, prior to his complaint with Human Resources, complained of the harassment to anyone on the Globetrotter I who was in higher management or who had the power to remedy the problem, Collins has failed to raise a genuine issue of material fact on whether Noble knew or should have known of the harassment prior to the time Collins made his complaint to Human Resources. *See e.g., Spencer*, 576 F.App'x at 448 (where there was no summary judgment evidence that "management was aware of what the foremen were doing" plaintiff "failed to show a genuine dispute of material fact as to whether [the employer] knew or should have known of the harassing conduct yet failed to take prompt remedial action."); *see also Johnson*, 2018 WL 5984847

> ("Because an employer is only potentially liable for negligence in remedying and preventing harassment of which it negligently failed to discover, courts must make two inquiries: first, into the employer's actual or constructive knowledge of harassment, and second, into the adequacy of the employer's [response]."). The Fifth Circuit has noted that "[a]ctual notice can be proven by evidence that the plaintiff complained to someone in management with the authority to take remedial action, whereas constructive notice is demonstrated by showing that the harassment was sufficiently pervasive to give 'rise to the inference of knowledge or constructive knowledge' on the part of someone with remedial authority." *Griffin*, 1999 WL 155682, at *9 (internal citations omitted) (quoting *Waltman v. Int'l Paper Co.*, 875 F.2d 468, 478 (5th Cir.1989)). Once knowledge of the discriminatory conduct is imputed to the employer, the plaintiff must show the employer failed to take prompt remedial action reasonably calculated to end the harassment. *See Stewart*, 586 F.3d at 329.

In this case, nothing in Collins' Declaration or his deposition testimony evidences that Noble had any actual or constructive knowledge of the harassment prior to Collins' complaint to Human Resources.

at *7-8 (where plaintiff did not utilize the "additional reporting channels provide [by her employer] once she believes that the initial complaints were ineffective," summary judgment was warranted on her hostile work environment claim). There being no genuine issue of material fact on that fifth element of Collins' hostile work environment claim, summary judgment on that claim is warranted.

### C. Retaliation Claim under Title VII

Collins' retaliation claim is based on a written reprimand he received on June 12, 2014, ten days after he made his complaints to Human Resources about the sex harassment on the Globetrotter I, as well as his transfer to another offshore facility, which he claims was retaliatory insofar as it affected his ability to advance or be promoted and foreclosed his ability to receive a well-completion bonus that he would have qualified for if he had remained assigned to the Globetrotter I.

In addition to proscribing discrimination, Title VII also proscribes an employer from retaliating against an employee for opposing an unlawful employment practice. 42 U.S.C. § 2000e-3.[7] For retaliation claims under Title VII, a plaintiff must establish a *prima facie* case of retaliation, with proof that: (1) the plaintiff engaged in protected activity, (2) an adverse employment action occurred, and (3) a causal link exists between the protected activity and the adverse employment decision. *Sherrod v. American Airlines, Inc.*, 132 F.3d 1112, 1122 & n.8 (5th Cir. 1988). "Protected

---

[7] Under 42 U,S.C. § 2000e-3(a),

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any member thereof or applicant for membership, because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

15

activity is defined as opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding or hearing under Title VII." *Green v. Adm'rs of the Tulane Educ. Fund*, 284 F.3d 642, 657 (5th Cir. 2002). What constitutes an "adverse employment action" for purposes of a retaliation claim is not the same as what constitutes an adverse employment action for purposes of a disparate treatment claim. In *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), the United States Supreme Court made it clear that for purposes of the anti-retaliation provisions of Title VII, an adverse employment action is not limited to ultimate employment decisions, but instead encompasses actions taken by an employer that are harmful enough that it "might have dissuaded a reasonable worker from" engaging in protected activity. Thus, what constitutes an adverse employment action for purposes of a retaliation claim is highly dependent upon the context and circumstances at issue. *McCoy v. City of Shreveport*, 492 F.3d 551, 560 (5th Cir. 2007); *see also Monsivais v. Arbitron, Inc.*, 44 F.Supp.3d 702, 707 (S.D. Tex. 2014) (what constitutes an adverse employment action for a retaliation claim is "an objective fact-specific review 'because the significance of any given act of retaliation will often depend upon the particular circumstances. Context matters.'") (quoting *Burlington N.*, 548 U.S. 53, 69)). As for the *prima facie* requirement of a causal link between protected activity and an adverse employment action, the timing of an adverse employment action in relation to when an employee engaged in a protected activity "can be a significant, although not necessarily determinative, factor" in determining whether a causal nexus exists. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1092 (5th Cir. 1995); *see, e.g., Grizzle v. Travelers Health Network, Inc.*, 14 F.3d 261, 268 (5th Cir. 1994) (finding that a ten month lapse between filing a complaint with a supervisor and an adverse employment action failed to support an inference of

16

retaliation). At the *prima facie* stage, a "but for" causal link need not be shown. *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001).

Once the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment decision. *Sherrod*, 132 F.3d at 1122. If the defendant carries this burden, the plaintiff must prove that the stated nondiscriminatory reason for the adverse employment action is a "pretext" for discrimination by either directly persuading "the trier of fact that 'a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered reason is unworthy of credence'" *Thomas v. Clayton Williams Energy, Inc.*, 2 S.W.3d 734, 739-40 (Tex. App.–14th Dist. 1999) (quoting *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981)). To carry the ultimate burden on a retaliation claim, a plaintiff must also show that a defendant would not have taken the adverse employment action "but for" the plaintiff's participation in the protected activity. *See Scrivner v. Socorro Indep. Sch. Dist.*, 169 F.3d 969, 972 (5th Cir. 1999).

Here, Collins' retaliation claim fails at the *prima facie* case stage. Although Collins engaged in protected activity when he complained to Human Resources in June 2014 about the sex harassment on the Globetrotter I, the two allegedly adverse employment actions he has identified do not constitute sufficiently harmful actions that would have dissuaded a reasonable worker from engaging in protected activity. The written reprimand issued by Terence Gallow and Matt Housley to Collins on June 12, 2014 stated as follows:

> After a previous verbal warning, we have continued to have problems with Andrew on being later. We continue to have problems with him taking to[o] long for lunch causing us to be late starting jobs. When we are able to give them breaks, he is one of the first ones there and the last one to come back every time. The final thing was today after our drill we always have an AAR. After both crews waited on him for 10

> minutes he was paged to come up to the bridge for the AAR. We found out that we were waiting on him because he decided to go smoke instead of coming to AAR.

Noble Employee Disciplinary Information (Document No. 21-3) at 2. While that written reprimand has temporal proximity to Collins' complaints to Human Resources of sex harassment, the reprimand had no adverse consequences for Collins, nor were any adverse consequences suggested in the reprimand. *See* Leal Declaration (Document No. 17-3 at 5) ("As part of our investigation into the inappropriate touching on the Globetrotter I, I also learned that Mr. Collins had received a disciplinary write-up for arriving late to an AAR meeting. I substantiated that Collins needed to be paged and arrived late for the meeting. Because the write-up was intended only as a verbal counseling to Collins to arrive on time to meetings, it was not entered into Collins's personnel file."); *see also e.g.*, Perez v. Brennan, No. 1:17-CV-00043, 2017 WL 5534244, at *6 (S.D. Tex. Nov. 17, 2017) ("the letter of warning Plaintiff received for his absences from work was not, in and of itself, an adverse employment action"); *King v. Louisiana*, 294 F. App'x 77, 85 (5th Cir. 2008) ("allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation"). As for Collins' transfer to the Noble Bob Douglas on July 14, 2014, Noble did not consider that to be adverse in any way, and instead characterized the Noble Bob Douglas as a "better" rig, as well as a way for Collins to have a "fresh start." Leal Declaration (Document No. 17-3 at 5) ("In connection with his transfer to the *Noble Bob Douglas*, I confirmed that he received a week of standby pay for his first hitch, so that he was paid for four weeks of work, even though he only worked a three-week hitch. I also ensured that Collins received a well-completion bonus from the *Globetrotter I.* Collins suffered no loss of income as a result of the transfer and remained a

roustabout. I consider the *Noble Bob Douglas* a better rig than the *Globetrotter I* because it is newer."). Collins' belief that his transfer was retaliatory is speculative as is his belief that the promotion and bonus opportunities were better on the Globetrotter I. Collins' deposition testimony in this regard is important. *See Vann v. Mattress Firm, Inc.*, No. CIV.A. H-12-3566, 2014 WL 4677459, at *6 (S.D. Tex. Sept. 18, 2014), *aff'd*, 626 F. App'x 522 (5th Cir. 2015) ("Plaintiff's subjective belief that a reassignment is less prestigious or less desirable is insufficient to establish that a transfer is an adverse employment action."). When asked why he thought his transfer to the Noble Bob Douglas was retaliatory, Collins responded that he could not "recall at this time." Collins Deposition at 129 (Document No. 21-4 at 131). When asked whether he considered the Noble Bob Douglass a less desirable offshore facility than the Globetrotter I, Collins also responded that he could not "recall at this time." *Id.* at 136 (Document No. 21-4 at 138).

In all, the summary judgment evidence does not support a *prima facie* case of retaliation. There is no summary judgment evidence in the record to support the conclusion that either the June 12, 2014 write-up, or Collins' lateral transfer to the Noble Bob Douglas were adverse employment actions within the meaning of *Burlington*. Accordingly, Noble is entitled to summary judgment on Collins' Title VII retaliation claim.[8]

---

[8] Noble is additionally entitled to summary judgment on the Collins' retaliation claim premised on his lateral transfer to the Noble Bob Douglas because Collins did not raise this claim in his EEOC charge and therefore did not exhaust his administrative remedies relative to that claim. While Collins argues that his complaint about his transfer is necessarily subsumed in the complaints of retaliation he did include in his EEOC charge, "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice'" that should be included in a timely EEOC charge. *Caldwell v. Enter. Prod. Co.*, No. CV H-15-3463, 2016 WL 5372528, at *4 (S.D. Tex. Sept. 26, 2016).

## IV. Conclusion and Recommendation

Based on the foregoing, Collins' abandonment of his § 1981 race discrimination claims, and the summary judgment evidence in the record, which does not support a *prima facie* case of either sex discrimination or retaliation under Title VII, the Magistrate Judge concludes that Noble is entitled to summary judgment on all of Collins' claims, and it is

RECOMMENDED that Defendant Noble Drilling (U.S.) LLC's Motion for Summary Judgment (Document No. 17) be GRANTED in its entirety.

The Clerk shall file this instrument and provide a copy to all counsel and unrepresented parties of record. Within fourteen (14) days after being served with a copy, any party may file written objections pursuant to 28 U.S.C. § 636(b)(1)(C), FED. R. CIV. P. 72(b), and General Order 80-5, S.D. Texas. Failure to file objections within such period shall bar an aggrieved party from attacking factual findings on appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Ware v. King*, 694 F.2d 89 (5th Cir. 1982), *cert. denied*, 461 U.S. 930 (1983); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982) (en banc). Moreover, absent plain error, failure to file objections within the fourteen day period bars an aggrieved party from attacking conclusions of law on appeal. *Douglass v. United Services Automobile Association*, 79 F.3d 1415, 1429 (5th Cir. 1996). The original of any written objections shall be filed with the United States District Clerk.

Signed at Houston, Texas, this 19th day of December, 2018.

FRANCES H. STACY
UNITED STATES MAGISTRATE JUDGE